**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

| | |
|---|---|
| **PRINCIPAL SECURITIES, INC.,**<br><br>*Petitioner*,<br><br>v.<br><br>**SANJEEV AGARWAL, RAJSHRI AGARWAL, and TECHNOCHEM INTERNATIONAL, INC.,**<br><br>*Respondents*. | Case No. 04:20-cv-257 |

**PETITION TO ENJOIN FINRA ARBITRATION FILED BY SANJEEV AGARWAL, RAJSHRI AGARWAL & TECHNOCHEM INTERNATIONAL, INC.**

Petitioner Principal Securities, Inc. ("PSI") respectfully submits this Petition to Enjoin the Arbitration filed with the Financial Industry Regulatory Authority ("FINRA") by Sanjeev Agarwal, Rajshri Agarwal, and Technochem International, Inc. (collectively, "Respondents"). In support of this Petition, PSI states as follows:

## I.   PRELIMINARY STATEMENT

Respondents initiated a baseless FINRA arbitration against PSI despite the fact that they were never customers of PSI or not PSI customers at the time of the dispute arose, never signed any account agreements with PSI mandating arbitration, and do not allege that their interactions with John Krohn ("Mr. Krohn"), a former registered representative associated with PSI, were driven by their belief that he was advising them under PSI's banner. Instead, Respondents were business partners of Mr. Krohn outside of his capacity as a PSI registered representative and were at all times involved in business ventures rather than securities transactions that any party believed were in any way connected to PSI. As a result, Respondents were not customers of PSI when their claims accrued, and thus, PSI is not required to submit the present dispute to

resolution via FINRA arbitration. PSI's Petition should be granted, and Respondents must be enjoined from proceeding with the currently-pending FINRA arbitration.

## II. JURISDICTION

This Court has jurisdiction over the present Petition to Enjoin as it arises out of a claim that could have been originally filed in this Court pursuant to 28 U.S.C. § 1331, in that Respondents' claim invokes federal question jurisdiction under the Federal Securities Act of 1934, 15 U.S.C. § 77j, et seq. Further, where an independent basis for federal court jurisdiction exists, as it does here, the Federal Arbitration Act grants federal courts the authority to resolve disputes regarding arbitrability of claims. *See Hall Street Assoc., LLC v. Mattel, Inc.*, 552 U.S. 576, 581-82 (2008).

## III. VENUE

Venue is proper in the United States District Court for the Southern District of Iowa, Central Division, as Petitioner and Respondents are residents of this District and Division and the dispute in question arises out of conduct in this District and Division. *See* 28 U.S.C. § 1391(b)(1)-(2).

## IV. PARTIES

1. Petitioner Principal Securities, Inc. is an Iowa corporation with its principal place of business in Des Moines, Iowa. (*See* Exhibit A, Declaration of Meaghan Alvarez, ¶ 6 (hereinafter the "Alvarez Declaration").)

2. Respondents Dr. Sanjeev Agarwal ("Dr. Agarwal") and Mrs. Rajshri Agarwal ("Mrs. Agarwal") are a married couple residing in Ames, Iowa. (*See* Exhibit B, Statement of Claim, ¶¶ 1-2) (to be filed under seal).

3.     Dr. and Mrs. Agarwal are the sole owners of Respondent Technochem International, Inc. ("Technochem"), which has its principal place of business in Boone, Iowa (*See id.* at ¶ 3.)

## V.    FACTUAL BACKGROUND

4.     PSI is a FINRA-registered broker-dealer (CRD# 1137). (*See* Exhibit A, Alvarez Dec., ¶ 5.)

5.     Respondents Rajshri Agarwal and Technochem are not customers of PSI. They have never maintained any accounts with PSI, nor have they ever invested with or purchased securities of any type by or through PSI. (*See id.* at ¶ 7.)

6.     Respondent Sanjeev Agarwal became a PSI customer via a policy ownership change in July 2019. Dr. Agarwal did not execute an arbitration agreement in connection with becoming a PSI policy owner. Prior to July 2019, Dr. Agarwal was not a customer of PSI, had never maintained any accounts with PSI, and had never invested with or purchased securities of any type by or through PSI. (*See id.* at ¶ 8.)

7.     PSI did not enter into any pre-dispute agreements to arbitrate disputes with Respondents Mrs. Agarwal or Technochem. Nor did PSI enter into any pre-dispute agreement signed by Mr. Agarwal that would require arbitration of the dispute at hand. (*See id.* at ¶ 9.)

8.     PSI has also not entered into any post-dispute agreements to arbitrate the present dispute with Respondents. (*See id.* at ¶ 10.)

9.     Additionally, PSI did not sign the FINRA Uniform Submission Agreement consenting to resolving this dispute via FINRA arbitration. (*See id.* at ¶ 11.)

10.    On March 21, 2020, Respondents filed their Statement of Claim with FINRA. (*See* Exhibit B, Statement of Claim.)

11. PSI was served with a copy of the Statement of Claim on March 23, 2020, and by agreement of the Parties, PSI's answer to the Statement of Claim was due, and was filed, on June 26, 2020. (*See* Exhibit C, Answer to Statement of Claim) (to be filed under seal).

12. Respondents have not identified a single account any of them maintained with PSI, nor have they provided any account agreements or contracts between the parties that mandate that PSI must submit disputes with the Respondents to FINRA arbitration. Quite simply, Respondents Rajshri Agarwal and Technochem are not now and have never been PSI customers, and Respondent Sanjeev Agarwal was not a customer when Respondents' claims arose. Therefore, Respondents cannot establish that PSI is required to arbitrate the present dispute before a FINRA panel.

## VI. ARGUMENT

In order to prevail on a motion for injunctive relief, the moving party must show (1) the movant's likelihood of success on the merits; (2) the threat of irreparable harm; (3) the balance between the harm to the movant if the injunction is denied and the harm to other parties if the injunction is granted; and (4) the public interest. *See Dataphase Sys., Inc. v. CL Sys., Inc.,* 640 F.2d 109, 113 (8th Cir. 1981). "'No single [*Dataphase*] factor in itself is dispositive; in each case all of the factors must be considered to determine whether on balance they weigh towards granting the injunction.'" *Baker Elec. Co-op., Inc. v. Chaske,* 28 F.3d 1466, 1472 (8th Cir. 1994) (quoting *Calvin Klein Cosmetics Corp. v. Lenox Labs., Inc.*, 815 F.2d 500, 503 (8th Cir. 1987) (citing *Dataphase*)). However, "[t]he basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 506–07 (1959). "'A district court has broad discretion when ruling on requests for preliminary injunctions, and [the appellate court] will reverse only for clearly erroneous factual

determinations, an error of law, or an abuse of that discretion.'" *Entergy, Ark., Inc. v. Nebraska*, 210 F.3d 887, 898 (8th Cir. 2000) (quoting *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1179 (8th Cir. 1998)).

Here, PSI satisfies all four *Dataphase* factors, and its Motion to Enjoin the FINRA arbitration filed by Respondents should be granted.

**A.     Likelihood of Success on the Merits**

The first factor the Court must consider is PSI's likelihood of success on the merits of its argument that it is not subject to FINRA arbitration with the Respondents. "A dispute must be submitted to arbitration if there is a valid agreement to arbitrate and the dispute falls within the scope of that agreement." *Berkley v. Dillard's Inc.,* 450 F.3d 775, 777 (8th Cir. 2006). A party who has not agreed to arbitrate a dispute cannot be forced to do so. *See PCS Nitrogen Fertilizer, L.P. v. Christy Refractories, L.L.C.,* 225 F.3d 974, 977 (8th Cir. 2000). The Eighth Circuit Court of Appeals has explained that "courts generally 'ask only (1) whether there is a valid arbitration agreement and (2) whether the particular dispute falls within the terms of that agreement.'" *EEOC v. Woodmen of World Life Ins. Soc.*, 479 F.3d 561, 566 (8th Cir. 2007) (quoting *Faber v. Menard, Inc.*, 367 F.3d 1048, 1052 (8th Cir. 2004)). Here, no valid arbitration agreement exists between the parties that could possibly cover the claims brought in the arbitration.

PSI does not currently and has never had any agreement with Mrs. Agarwal or Technochem to arbitrate disputes. Neither Mrs. Agarwal nor Technochem have ever maintained an account with PSI, invested with PSI, or signed an account agreement (or any other agreement) with PSI that would mandate arbitration. (Exhibit A, ¶ 7). Thus, it is clear that PSI cannot be compelled to arbitrate Mrs. Agarwal's or Technochem's claims because no arbitration agreement exists.

Likewise, while Dr. Agarwal did become a PSI customer in July 2019 via a policy ownership transfer, he still never executed an arbitration agreement with PSI. (Exhibit A, ¶ 8.) Moreover, even assuming an arbitration agreement did exist between Dr. Agarwal and PSI in July 2019, such an agreement would be inapplicable to the claims at issue.

While it is true that FINRA Rule 12200 ("Rule 12200") requires that member entities, such as PSI, submit to FINRA arbitration if (1) requested by a *customer*, and (2) if the dispute arises *in connection with the business activities of the member firm or associated person of a member firm*, Respondents were not customers of PSI and did not maintain any accounts or investments with or through PSI during the time of the disputed events. Under Rule 12200, a "customer" is "one involved in a business relationship with an NASD[1] member that is directly related to investment or brokerage services." *Fleet Boston Robertson Stephens, Inc. v. Innovex, Inc.*, 264 F.3d 770, 772 (8th. Cir. 2001) (interpreting NASD Rule 10301[2]). "[C]ustomers of associated persons of a firm may compel arbitration with the firm." *See Berthel Fisher & Co. v. Larmon*, 695 F.3d 749, 753 (8th. Cir. 2012).

Here, however, Respondents are not customers entitled to compel PSI to arbitration. Mrs. Agarwal and Technochem do not now and have never held brokerage accounts at PSI or with Mr. Krohn. (Exhibit A, ¶ 7.) Mrs. Agarwal and Technochem have never made investments or purchased securities of any kind with PSI. (Exhibit A, ¶ 7.) Moreover, all the Respondents acted as business partners – not customers – to Mr. Krohn in business ventures that had nothing to do

---

[1] The National Association of Securities Dealers or NASD was the predecessor to the Financial Industry Regulatory Association or FINRA.
[2] "Rule 12200 of the [FINRA] Code is an amended version of former [NASD] Rule 10301 that went into effect on April 16, 2007. The cases interpreting and applying Rule 10301 apply with equal force to Rule 12200, as the amendment did not effect any substantive change to the rule." *Herbert J. Sims & Co., Inc. v. Roven*, 548 F. Supp. 2d 759, 763 n. 2 (N.D. Cal.2008).

with PSI. Therefore, it is evident that they may not invoke Rule 12200 to compel PSI to arbitration.

As to Mr. Agarwal, while it is true that he became a policy owner in July 2019, he was not a customer of PSI or Mr. Krohn at the time of the disputed events and therefore cannot compel arbitration under Rule 12200. Customer status under Rule 12200 should be assessed at the time of the occurrence of events that constitute the factual predicate for the causes of action contained in the arbitration complaint. *See Wheat, First Securities, Inc. v. Green*, 993 F.2d 814, 820 (11th Cir. 1993), abrogation on other grounds recognized by *Larsen v. Citibank FSB, et al.*, 871 F.3d 1295, 1303, n. 1 (11th Cir. 2017) (holding that "customer status . . . must be determined as of the time of the events providing the basis for the allegations of fraud"). Therefore, because the disputed events occurred prior to July 2019 when Mr. Agarwal was *not* a customer, Mr. Agarwal and the other Respondents cannot compel arbitration of the disputes in the Statement of Claim.

Moreover, Respondents' claims did not arise in connection with the business activities of the member or the associated person as required under Rule 12200. FINRA members, like PSI, are not required to arbitrate claims that arise out of "activities of the associated person that are unrelated to his or her relationship with the FINRA member." *See Pictet Overseas, Inc. v. Helvetia Trust*, 905 F.3d 1183, 1189 (11th Cir. 2018). The present dispute arises out of the outside business ventures of a former registered representative, Mr. Krohn, and not out of any business activities or actions on the part of PSI or related to PSI's relationship with Mr. Krohn.

Thus, FINRA Rule 12200 is inapplicable, and Respondents cannot demand FINRA arbitration.³ As such, PSI is not required to arbitrate the claims asserted and is likely to prevail on the merits of its argument that it is not subject to FINRA jurisdiction in this matter.

**B.     Irreparable Harm**

It is well-settled that when a party is compelled to arbitrate a dispute it has not agreed to arbitrate, that party would suffer irreparable harm. *See O.N. Equity Sales Co. v. Pals*, 509 F. Supp. 2d. 761, 770 (N.D. Iowa 2007) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)); *see also McLaughlin Gormley King Co. v. Terminix Intern. Co., L.P.*, 105 F.3d 1192, 1194 (8th Cir. 1997) (identifying the cost of defending the arbitration and legal action to challenge unfavorable arbitration awards as a source of irreparable harm). Indeed, federal courts around the country have held that "[b]eing forced to arbitrate a claim one did not agree to arbitrate constitutes an irreparable harm for which there is no adequate remedy at law." *UBS Secs., LLC v. Voegeli,* 405 F. App'x 550, 552 (2d Cir. 2011); *accord Merrill Lynch Inv. Managers v. Optibase, Ltd.,* 337 F.3d 125, 129 (2d Cir. 2003).⁴ As such, it is clear that should PSI be forced to arbitrate Respondents' claims it would suffer irreparable harm, and thus, PSI satisfies the second *Dataphase* factor.

**C.     Balancing of the Harms**

Next, the Court must look at the threat to each of the parties' rights that would result from granting or denying the requested injunction. *See Baker Elec. Co-op.*, 28 F.3d at 1473. Here, it is

---

³ FINRA Rule 12200 also specifically excludes insurance-related business from its arbitration requirements.
⁴ *See also Textile Unlimited, Inc. v. ABMH and Co.*, 240 F.3d 781, 786 (9th Cir. 2001) (confirming preliminary injunction based on district court's finding that plaintiff would suffer irreparable harm if arbitration were not stayed); *Maryland Cas. Co. v. Realty Advisory Bd. on Labor Relations*, 107 F.3d 979, 985 (2d Cir. 1997) ("[Plaintiff] would be irreparably harmed by being forced to expend time and resources arbitrating an issue that is not arbitrable, and for which any award would not be enforceable."); *Gruntal & Co., Inc. v. Steinberg*, 854 F. Supp. 324, 342 (D.N.J. 1994) (compelling a party to appear in arbitration when it did not agree to arbitration of any sort would constitute per se irreparable harm).

undisputed that there is no written agreement requiring arbitration and that Respondents were either never customers of PSI or not customers of PSI at the time that the disputed events occurred. Thus, there is no legitimate basis for forcing PSI to arbitrate the present dispute. Indeed, forcing PSI to arbitrate a dispute with third parties with whom it had no customer relationship imposes significant harm on PSI and subjects PSI to a potentially unending stream of FINRA arbitrations from non-customers. On the other hand, Respondents will suffer no harm whatsoever. Indeed, they will not lose any rights or remedies to which they would otherwise be entitled, as they have no right to seek FINRA arbitration of this matter. Instead, enjoining the pending FINRA arbitration puts the parties in the position they otherwise would (and should) have been had Respondents not initiated the impermissible arbitration with FINRA. As such, the balancing of the harms clearly favors PSI, and its Motion to Enjoin should be granted.

**D.  Public Interest**

It is true that the Federal Arbitration Act ("FAA") reflects a strong federal policy favoring the arbitration of disputes, which has been reinforced by the courts. *See Dean Witter Reynolds v. Byrd*, 470 U.S. 213, 218 (1985). However, even strong federal policy must give way to the principles of contract law, and a party who has not agreed to arbitrate a dispute cannot be forced to do so. *PCS Nitrogen Fertilizer, L.P. v. Christy Refractories, L.L.C.,* 225 F.3d 974, 977 (8th Cir. 2000). Indeed, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Howsam*, 537 U.S. at 83, (quoting *Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960)). Thus, while federal policy may favor arbitration of disputes, it is the public interest that parties not be compelled to arbitrate disputes where they did not previously agree to do so, either via contract

or self-regulatory industry rules. Here, PSI did not agree to arbitrate the present dispute, and as such, the public interest favors enjoining Respondents' pending FINRA arbitration.

## VII. CONCLUSION

PSI has established that it will likely succeed on the merits of its argument that it is not subject to FINRA arbitration because nothing requires PSI to arbitrate the present dispute. Additionally, it is well-settled that forcing PSI to arbitrate where it has not otherwise agreed to do so represents an irreparable harm to PSI. Similarly, forcing PSI to arbitrate where it has not agreed to do so also imposes significantly more harm on PSI than it does on Respondents, as Respondents do not have the right to compel arbitration in the first place. Finally, it is in the public interest that parties such as Respondents not be permitted to force others to arbitrate disputes where no basis exists to do so. As such, PSI has satisfied the *Dataphase* factors, and the Court should grant its Petition and enjoin Respondents from proceeding with their pending FINRA arbitration.

## VIII. PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Petitioner respectfully requests that the Court enter an Order:

1. Enjoining the FINRA arbitration initiated by Respondents;

2. Taxing all costs to Respondents; and

3. Granting such further and additional relief as may be necessary and proper.

Respectfully submitted this 13th day of August, 2020.

                                        */s/ Angel A. West*
                                        Angel A. West             AT0008416
                                        **NYEMASTER GOODE, P.C.**
                                        700 Walnut Street, Suite 1600
                                        Des Moines, Iowa 50309
                                        (515) 283-3127
                                        (515) 283-8045 (fax)
                                        E-mail: aaw@nyemaster.com

                                        *Counsel for Principal Securities, Inc.*