# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| **PRINCIPAL SECURITIES, INC.,**<br><br>*Petitioner*,<br><br>v.<br><br>**SANJEEV AGARWAL, RAJSHRI AGARWAL, and TECHNOCHEM INTERNATIONAL, INC.,**<br><br>*Respondents*. | Case No. 4:20-CV-00257 |

## PETITIONER PRINCIPAL SECURITIES, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR PRELIMINARY AND PERMANENT INJUNCTION OF FINRA ARBITRATION

MAYNARD COOPER & GALE
Peter S. Fruin
Kathryn Roe Eldridge
Molli Masaniai
1901 Sixth Avenue North, Suite 2400
Birmingham, Alabama 35203
Phone: 205.254.1000
Facsimile: 205.254.1999
pfruin@maynardcooper.com
keldridge@maynardcooper.com
mmasaniai@maynardcooper.com

NYEMASTER GOODE, PC
Angel A. West
700 Walnut Street, Suite 1600
Des Moines, Iowa 50309
(515) 283-3127
(515) 283-8045 (fax)
aaw@nyemaster.com

*Attorneys for Respondent Principal Securities, Inc.*

Petitioner Principal Securities, Inc. ("Principal") hereby submits this brief Reply in Support of its Motion to Enjoin pursuant to Federal Rule of Civil Procedure 27 and Local Rule 7(g) in order to address a few glaring errors in Respondents' Memorandum of Law in Opposition to Petitioner's Motion for Preliminary and Permanent Injunction ("Opposition").

Respondents do not dispute that there is no written agreement to arbitrate the claims at issue. Respondents admit that the only way Principal can be required to arbitrate the present claims is if (1) they can be considered customers pursuant to FINRA Rule 12200 *and* (2) the dispute arises in connection with the *business activities* of the member firm or associated person of a member firm. Despite this standard, the bulk of Respondents' Opposition consists of salacious allegations entirely irrelevant to these issues. Respondents likely do so in an effort to hide the fact that they cannot meet this standard. Respondents were not customers of Principal or Mr. Krohn such that the claims they assert in the FINRA arbitration are required to be arbitrated.

I. **Respondents Are Not Customers of Principal or Mr. Krohn.**

Respondents assert that Principal's sole argument is that because Respondents did not have an account, they cannot be considered customers. Opposition, pp. 8; 10-11; 16. Principal's argument is much broader. While account status is not dispositive in determining customer status, it bears on that issue. *See Citigroup Glob. Markets Inc. v. Abbar*, 761 F.3d 268, 275 (2d Cir. 2014). Respondents alternatively suggest that any connection to the broker-dealer or its associated persons creates customer status. Opposition, pp. 2-5. The standard suggested by Respondents is not correct: Respondents must have had a relationship with Principal or Mr. Krohn "***that [was] directly related to investment or brokerage services***." *See Fleet Boston Robertson Stephens, Inc. v. Innovex, Inc.*, 264 F.3d 770, 772 (8th. Cir. 2001).

The Eighth Circuit has resoundingly stated that the customer definition does not cover all

1

business relationships:

> We do not believe that the [FINRA] Rules were meant to apply to every sort of financial service a[] [FINRA] member might provide, regardless of how remote that service might be from the investing or brokerage activities. . . [FINRA] Rules [do not] require a member to submit to arbitration in every dispute that involves its business activities with a non-member.

*Id*. at 772-73. Generally, an investment or brokerage relationship exists where a customer provides funds to an associated person who provides investment advice and opens an account at a FINRA member to invest customer funds. *See id.* (addressing three cases wherein "customers" provided money to representatives who opened accounts for investment on their behalf: "Although [these] other cases interpreting the term 'customer' have in some ways taken a broad view of the term, in all of these cases there existed some brokerage or investment relationship between the parties . . . **We decline to extend the definition where the business relationship did not include these activities**") (emphasis added). One who merely receives banking or financial advice from an associated person is not a "customer." *Id.*

Respondents admit that they had no relationship with Principal. Moreover, none of the Respondents had an *investment* or *brokerage* relationship with Mr. Krohn while he was associated with Principal.[1] Respondents never allege that they were customers of Mr. Krohn. Instead, the allegations reflect that Respondents were active, mutual participants in business ventures with Mr. Krohn. Mr. Krohn was not providing them with investment or brokerage advice; the allegations make clear the events in question were arms-length business deals. That Respondents now characterize those transactions as investments does not alter their nature.

---

[1] Activity between Respondents and Mr. Krohn after he terminated his association with Principal in January 2017 cannot create a customer relationship between Respondents and Principal. *See Berthel Fisher & Co. Fin. Servs. v. Larmon,* No. CIV. 11-889 ADM/JSM, 2011 WL 3294682, at *4-5 (D. Minn. Aug. 1, 2011) (explaining that a customer may compel a FINRA member to arbitrate only where the customer does business with an associated person). As such, Respondents' allegations relating to activity post-January 2017 is irrelevant to the analysis before the Court.

Respondents argue that their "investments" in Glycerin Group LLC d/b/a KemX Global ("KemX") and Spotlight Innovation LLC ("Spotlight") create their customer status. *See* Doc. 4, pp. 3-4. According to the allegations, KemX was a joint business venture in which Respondents were brought on as partners due to their technical and industry expertise. *Id.* at 6. Dr. Agarwal was the president and CEO of KemX and as such, was a chief decision-maker for the company. Doc. 4-1, p. 4. Technochem owned 25% of the venture and <u>loaned equipment</u> to KemX to conduct its operations. Doc. 4, p. 6. Respondents acknowledge that their relationship with KemX was a result of receiving equity interests in exchange for their expertise. Doc. 4, pp. 6-10. Simply put, this is a business relationship, not a relationship related to investment or brokerage services.

Likewise, allegations that Technochem loaned significant resources to KemX, do not evidence an investment relationship, but a business relationship. *See* Doc. 4-1, p. 5. Sharing resources such as personnel, space, and equipment again does not create an investment or brokerage relationship that signifies customer status. There are no allegations that Mr. Krohn provided Respondents with investment advice or guidance that would rise to the level of "investment services"; instead, the allegations demonstrate that the KemX-related "transactions" were arms-length business dealings.

Likewise, Respondents' decisions (or lack thereof) to invest in Spotlight do not create a customer relationship with Mr. Krohn. Respondents allege that Dr. Agarwal invested roughly $250,000 in August 2016. Doc. 4, p. 13. Neither Mrs. Agarwal nor Technochem invested in Spotlight while Mr. Krohn was associated with Principal. Thus, neither Mrs. Agarwal nor Technochem can be considered customers by virtue of any transactions in Spotlight. Nor do the allegations relating to Dr. Agarwal's limited investment in Spotlight suggest that Mr. Krohn was providing *investment or brokerage services* sufficient to make Mr. Agarwal a customer of Mr.

Krohn.

Respondents' Exhibits to their Opposition do nothing to bolster their argument and in fact prove the lack of any relationship.[2] First, Exhibits D-H include documents or communications that took place *after* Mr. Krohn left Principal in January 2017. Thus, they do not prove a relationship for which Principal can be held accountable. In fact, Exhibit G, expressly identifies Mr. Krohn as "formally retired" from Principal. Doc. 13-8, at 3. Exhibit A is not an investment solicitation as Respondents suggest but is merely a blank email from Mr. Krohn's personal email address attaching a term sheet. Nothing in the email or term sheet reflects investment or brokerage services, or even an investment solicitation. Exhibit B is similarly flawed, and Exhibit C is nothing more than a Spotlight stock certificate that lists as owner "Sanjeev Agarwal", which shows that only Dr. Agarwal purchased Spotlight stock, but does not show how or why he came to own that stock. Exhibit D (2017-2018 KemX Balance Sheet) and Exhibit E (KemX Global 2017 Expenses to Technochem) are business records that do not pertain in any way to Principal or to Mr. Krohn in his capacity as an associated person. But they do demonstrate the business nature of the relationship as opposed to any investment or brokerage services. Exhibit F is an email and loan term sheet regarding a loan by the Agarwals to Spotlight in April 2017, months after Mr. Krohn left Principal. Therefore, it is clear that Respondents' exhibits do nothing to advance their argument and are improperly before the Court.

Thus, nothing in the Opposition alters the fact that Respondents were not customers of Principal or Mr. Krohn such that their claims are required to be arbitrated.

---

[2] As an initial matter, the Court should not consider these Exhibits because they are not properly authenticated. Respondent Technochem's counsel (rather than Dr. or Mrs. Agarwal) purports to authenticate Exhibits A-I through his own declaration. Counsel cannot authenticate these exhibits because he has no personal knowledge of them. *See Shanklin v. Fitzgerald*, 397 F.3d 596, 602 (8th Cir. 2005) ("[D]ocuments must be authenticated by and attached to an affidavit made on personal knowledge").

## II.   The Dispute Does Not Arise in Connection with the Business Activities of Principal.

FINRA members, like Principal, are not required to arbitrate claims that arise out of "activities of the associated person that are unrelated to his or her relationship with the FINRA member." *See Pictet Overseas, Inc. v. Helvetia Trust*, 905 F.3d 1183, 1189 (11th Cir. 2018). The present dispute revolves around Mr. Krohn's involvement with two outside business entities that had no connection to Principal. As evidenced by Respondents' allegations and the exhibits to their Opposition, these businesses were legitimate going concerns with ongoing activities in which Respondents were actively involved as business partners. These were outside business activities of Mr. Krohn, identified as such, and entirely unrelated to his relationship with Principal. In fact, when FINRA reviewed Mr. Krohn's personal outside investments, it found that "[t]hose purchases were outside the scope of [Mr.] Krohn's employment with Principal Securities and he did not notify his firm about those transactions, his role in them, and whether he had received or expected to receive selling compensation." *See* Opposition, Exhibit I, p. 2, §2. Moreover, FINRA did not find any wrongdoing on the part of Principal. *Id*.

Understanding the shortcomings of their arguments, Respondents attempt to back into the standard by arguing that because they assert a claim for failure to supervise, it brings their claims within Principal's business activities. However, these claims fail as a matter of law and therefore cannot be the basis for compelling Principal to arbitrate. *See Hollinger v. Titan Capital Corp., 914 F.2d 1564, 1575 (9th Cir. 1990)*; *Riniker v. Locust Street Securities, Inc.*, 720 N.W.2d 191 (Iowa Ct. App. 2006); *Asplund v. Selected Invs. in Fin. Equities,* 86 Cal. App. 4th 26, 41 (Cal. Ct. App. 2000).

Based on the foregoing, Petitioner requests that the Court grant its Motion for Preliminary and Permanent Injunction.

Dated: September 18, 2020                    Respectfully submitted,

                                             */s/ Peter S. Fruin*
                                             Peter S. Fruin, *pro hac vice*
                                             Kathryn Roe Eldridge, *pro hac vice*
                                             Molli Masaniai, *pro hac vice*

**OF COUNSEL**:
MAYNARD COOPER & GALE
1901 Sixth Avenue North, Suite 2400
Birmingham, Alabama 35203
Phone: 205.254.1000
Facsimile: 205.254.1999
pfruin@maynardcooper.com
keldridge@maynardcooper.com
mmasaniai@maynardcooper.com

Angel A. West
NYEMASTER GOODE, PC
700 Walnut Street, Suite 1600
Des Moines, Iowa 50309
(515) 283-3127
(515) 283-8045 (fax)
aaw@nyemaster.com

*Attorneys for Petitioner Principal Securities, Inc.*

**CERTIFICATE OF SERVICE**

I certify that on September 18, 2020, I electronically filed the foregoing with the Clerk of Court for the United States District Court for the Southern District of Iowa using the CM/ECF system, which will send notification of such filing to the counsel of record registered with the CM/ECF system.

Gail E. Boliver
BOLIVER LAW FIRM
2414 S. Second Street
Marshalltown, IA 50158
Tel: 641.752.7757
Fax: 641.752.6597
boliver@boliverlaw.com

Adam J. Weinstein, Esq.
GANA WEINSTEIN LLP
345 Seventh Avenue, 21th Floor
New York, NY 10001
Tel: 212.776.4251
aweinstein@ganallp.com

Jonathan Kurta, Esq.
FITAPELLI KURTA
28 Liberty Street, 30th Floor
New York, NY 10005
Tel: 212.658.1502
jkurta@fkesq.com

*Attorneys for Respondents*

                                         */s/ Peter S. Fruin*
                                         OF COUNSEL